J-A10045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NORMAN LEGG | : | |
| | : | |
| Appellant | : | No. 2194 EDA 2024 |

Appeal from the PCRA Order Entered August 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008604-2021

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED APRIL 15, 2025**

Appellant, Norman Legg, appeals the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.*, in which he alleged that his former counsel provided ineffective assistance by improperly inducing him to enter a guilty plea to aggravated assault and conspiracy to commit aggravated assault.[1] Appellant contends that his former counsel was ineffective for not advising him that the entry of his guilty plea in the instant matter would delay his eligibility for parole in a prior unrelated criminal matter. Upon review, we affirm.

As of March 1, 2019, Appellant was incarcerated in Building C2, Pod 1 of the Curran-Fromhold Correctional Facility at 7901 State Road in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1) and 903/2702(a)(1), respectively.

Philadelphia, along with his fellow conspirators, Samuel Evans, George Pinkney, and Daywan Hurst. *See* N.T. Guilty Plea Hearing, 10/21/22, 12. Appellant's other conspirator was Correctional Officer Shante Cummings ("CO Cummings"). *Id.* On the day prior to March 1, inmate/victim Christopher Dixon had a loud verbal altercation with CO Cummings concerning the correctional officer leaving him locked in his cell longer than his fellow inmates in the same pod. *Id.* During the altercation, CO Cummings called Dixon a "'[n]utass[ ]' N word" and told him that she could have him "[t]ouched." *Id.* at 12-13. CO Cummings also asked one of her co-workers at the time, "Who he thinks he's talking to?" *Id.* at 13.

At 12:42 p.m. on March 1, 2019, all the inmates in Building C2, Pod 1, were locked in their cells, except for Appellant, Evans, Hurst, and Pinkney; CO Cummings was on duty in the pod. *See* N.T. Guilty Plea Hearing, 10/21/22, 13. Evans spoke to CO Cummings at her desk and reached behind the desk before CO Cummings waived him off with her left hand. *Id.* Evans then ran over to Dixon's cell on the lower tier of the pod while CO Cummings watched him. *Id.* Appellant then joined Evans after walking down from the top tier. *Id.* at 14. On the way to Dixon's cell, Appellant looked back at CO Cummings, and she stretched her arms over her head before pressing a button on her console that opened the door to Dixon's cell. *Id.* As CO Cummings watched them, Appellant and Evans entered Dixon's cell, and they asked Dixon why he was arguing with CO Cummings, referring to CO Cummings by the nickname,

- 2 -

"Snoop." *Id.* Dixon told them about what had happened the day before, and Hurst and Pinkney joined them in the cell. *Id.*

One of the conspirator inmates in the cell challenged Dixon to a fight, and he declined. N.T. Guilty Plea Hearing, 10/21/22, 14. One of the conspirator inmates in the cell then punched Dixon. *Id.* Dixon defended himself while the three other inmates joined in, attacking Dixon with their fists and feet. *Id.* During this exchange, the attackers ejected Dixon's cellmate from the cell, and CO Cummings pressed buttons on her console to let two uninvolved inmates enter the correctional pod. *Id.* at 14-15. Pinkney left the cell, and one of the attackers shut the cell door from the inside. *Id.* at 15. One of the attackers then stabbed Dixon, once on his forehead and twice in his eye, with a sharp metal weapon that was never recovered. *Id.* Dixon then heard the cell door "pop," after which Appellant, Hurst, and Evans exited the cell as CO Cummings could be seen on video surveillance repeatedly pressing a button on her desk console. *Id.* CO Cummings did not report the incident in the Philadelphia Department of Prisons' "Lock and Track" logbook. *Id.* The next correctional officer on duty in the pod discovered Dixon's injuries, which included stab wounds to his face, a broken jaw, and significant swelling and bruising. *Id.* Dixon subsequently received treatment at a local hospital emergency room. *Id.*

On October 21, 2022, Appellant entered a guilty plea to the above-referenced offenses. *See* N.T. Guilty Plea Hearing, 10/21/22, 16. In exchange for the plea, the Commonwealth agreed to recommend the

imposition of three-to-six-year imprisonment terms for each of the offenses to be served concurrently with each other and any other sentences that Appellant was then serving.[2] *Id.* at 5 (Prosecutor: "Agg F1 and conspiracy F1. Three to six on both, concurrent to each other and concurrent to any other sentence."); *id.* at 8 (plea court confirming Appellant's understanding of sentencing recommendation); Guilty Plea Colloquy, 10/21/22, 3 ("Plea Bargain or Agreement") (signed by counsel and plea court but not by Appellant). Appellant, who attended the plea hearing via two-way simultaneous audio-visual communication, discussed the plea agreement with his counsel on the record as follows:

> [DEFENSE COUNSEL]: The [Commonwealth] actually ended up offering three to six, which is going to run concurrent to your sentence, meaning it's going to run at the same time. So[,] we don't even have to do an open plea anymore. Okay?
>
> [APPELLANT]: It don't -- credit for time served. It's not going to overlap my time, is it?
>
> [DEFENSE COUNSEL]: No. It's running concurrent, which means it's running at the same time. You're doing 6 to 12. So[,] it's not going to – it's not going to go longer than that. Okay?
>
> [APPELLANT]: All right.

---

[2] In exchange for the plea, the Commonwealth also *nolle prossed* additional charges for assault by a prisoner (18 Pa.C.S. § 2703(a)), simple assault (18 Pa.C.S. § 2701(a)), and recklessly endangering another person (18 Pa.C.S. § 2705), and declined to pursue a ten-year mandatory minimum second-strike sentence for a crime of violence pursuant to 42 Pa.C.S. § 9714(a)(1). **See** Guilty Plea Colloquy, 10/21/22, 3; Trial Disposition and Dismissal Form, 10/21/22, 1-2; N.T. Guilty Plea Hearing, 10/21/22, 6, 11.

[DEFENSE COUNSEL]: Sound good?

[APPELLANT]: Yeah.

N.T. Guilty Plea Hearing, 10/21/22, 3-4.  During the guilty plea colloquy, Appellant also confirmed the nature of the sentencing recommendation as follows:

[APPELLANT]:  Everything.  Everything is running concurrent with my time?

THE COURT:  Everything is running concurrent.  It's three to six concurrent.

*Id.* at 11.

Appellant waived a pre-sentence investigation report, and the plea court imposed the agreed-upon sentence at the end of the guilty plea hearing.  *See* Guilty Plea Colloquy, 10/21/22, 16, 18; Order (Negotiated Guilty Plea Sentencing), 10/21/22, 1.  Appellant did not file a post-sentence motion or an appeal.

On August 4, 2023, Appellant filed a *pro se* PCRA petition.  Subsequently appointed counsel filed an amended PCRA petition on December 20, 2023.  In the counseled petition, Appellant alleged that his former counsel "unlawfully induced" his plea by improperly advising him that the plea "would not add any more incarceration to the time he was already serving."  Amended PCRA Petition, 12/20/23, ¶¶ 9-12, *citing* N.T. Guilty Plea Hearing, 10/21/22, 3. Even though the sentencing order reflected a credit for time served, Appellant alleged, in a memorandum of law attached to his amended PCRA petition, that

his sentence commenced as of the date of his plea hearing rather than of the date of his arrest and, as a result, he received additional time to the sentence he was currently serving. *See* Memorandum of Law, 12/20/23, 8, attached to Amended PCRA Petition, 12/20/23. He alleged that he would have proceeded to trial if not for counsel "leading [him] to believe that he would not serve any additional time as a result of the instant negotiated guilty plea" and that he was "certainly not getting what he bargained for and what was plainly promised [to] him on the record." *Id.* at 8-9. Appellant requested in the petition, *inter alia*, the withdrawal of his plea and an amendment of his sentencing order to reflect a sentence start date of February 25, 2021 (date of his arrest in this matter). *See* Amended PCRA Petition, 12/20/23, 4; Memorandum of Law, 12/20/23, 9.

In a response to the petition, the Commonwealth proffered a copy of a DC16E form from the Pennsylvania Department of Corrections, reflecting a sentence status summary for Appellant ("DOC Form"). The DOC Form showed that Appellant's existing imprisonment term at the time of his guilty plea hearing, a term imposed at CP-51-CR-0005635-2017, had a maximum exposure date of May 31, 2029, whereas the maximum sentencing exposure date for the sentence imposed in the instant matter was October 21, 2028:

| Item | Computation 1 | Computation 2 | |
|---|---|---|---|
| Indictments Included | CP0005635 CT1/2017 | CP0008604 CT1/2021<br><br>CP0008604 CT2/2021 | |
| Eff Date | 05/31/2017 | 10/21/2022 | |
| Expiration of Minimum | 05/31/2023 | 10/21/2025 | |
| Expiration of Maximum | 05/31/2029 | 10/21/2028 | |
| Custody for Return - PV | | | |
| Delinquent Time | | | |
| Backtime Credit | | | |
| Backtime Owed | | | |
| New Maximum - PV | | | |
| Sentence Computation Date | 11/22/2022 | 11/22/2022 | |
| Basis for Computation | Initial | UL Max/OL Min | |
| Total Sentence | 6Y - 12Y | 3Y - 6Y | |
| Status | Active | Active | |

DOC Form, 11/22/22, 2, attached as Exhibit B to Commonwealth Response, 3/21/24. Based on the longer exposure date in the prior case, the Commonwealth reasoned that Appellant's ineffectiveness claim lacked merit because he received the benefit of his bargain where plea counsel's advice that the new sentence would not "go longer than" his prior sentence was correct. Commonwealth Response, 3/21/24, 5-7. With respect to Appellant's

request for an amendment of his sentencing order to create an earlier start date for the imprisonment term in the instant matter, the Commonwealth asserted that the sentencing court could not legally set a start date for the commencement of its sentence that was before his sentencing date.[3] *Id.* at 5-6.

_____

[3] In support of this point, the Commonwealth cited Pa.R.Crim.P. 1406(c), an outdated subsection of the precursor rule to our current Pa.R.Crim.P. 705. *See* Pa.R.Crim.P. 1406(c) (superseded) (prescribing that "[w]hen at the time sentence is imposed, the defendant is imprisoned under a sentence imposed for any other offense or offenses, the instant sentence which the judge is imposing shall be deemed to commence from the date of imposition thereof unless the judge states that shall commence from the date of expiration of such other sentence or sentences"). In 1996, paragraph (a) of this rule was amended and paragraph (c) was deleted to eliminate language creating a presumption that certain sentences run concurrently unless the judge states otherwise (paragraph (b) was also deleted as unnecessary). The version of Rule 705 that has been applicable at all times during the instant case has not included the Rule 1406(c) provision, or language similar to that former subsection, cited by the Commonwealth.

In any event, where the plea court unambiguously awarded a credit for time served in its sentencing order, the appropriate way for Appellant to challenge the computation of his credit for time served is an original action filed in the Commonwealth Court. *See Commonwealth v. Wyatt*, 115 A.3d 876, 879 (Pa. Super. 2015) ("If the alleged error is thought to be the result of an erroneous computation of sentence by the Bureau of Corrections, then the appropriate vehicle for redress would be an original action in the Commonwealth Court challenging the Bureau's computation.") (citation omitted). To the extent that Appellant's instant claim seeks relief based on an incorrect computation of his awarded time-credit, that part of his claim is not cognizable on collateral review. *See id.* ("It [is] only when the petitioner challenges the legality of a trial court's alleged failure to award credit for time served as required by law in imposing sentence, that a challenge to the sentence [is] deemed cognizable as a due process claim in PCRA proceedings.") (citation omitted).

On May 24, 2024, the PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. It informed Appellant that his petition was without merit because the record reflected that he was serving no additional time of incarceration because of his plea in the instant case since the sentence in the instant matter had a shorter maximum sentence than the imprisonment term that Appellant was already serving in his former criminal matter. *See* Rule 907 Notice, 5/24/24, 1. The court also agreed with the Commonwealth that it could not set an earlier commencement date for Appellant's sentence. *Id.* (citing Pa.R.Crim.P. 1406(c) (superseded)). After Appellant did not respond to the dismissal notice, the PCRA court dismissed the petition for lack of merit on August 5, 2024. Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). *See* Rule 1925(b) Statement, 8/31/24, 1; Order (Rule 1925(b)), 8/19/24, 1; Notice of Appeal, 8/15/24, 1.

Appellant presents the following question for our review:

Did the PCRA [c]ourt err in dismissing the PCRA petition as the [A]ppellant asserts that due to ineffective assistance of plea[ ]counsel, he was induced into pleading guilty as he was ill-advised to understand that the instant sentence would add no time to the sentence he was already serving[?]

Appellant's Brief, 7 (suggested answer and answer of lower court omitted).

Appellant continues to maintain that his prior counsel incorrectly advised him that his sentence in the instant case would not "add [any] time

to the sentence he was already serving." Appellant's Brief, 12. He alleges that the instant matter "added time due to [him] receiving no credit for time served between [his] arrest and sentencing." *Id.* He reasons that the new sentence "adds" more incarceration time for him because he would have reached the minimum of his prior sentence, and become parole eligible in that case, on May 31, 2023, but he now would not complete a minimum sentence and become parole eligible in the instant case until October 21, 2025. *Id.* at 17; *see also id.* at 19 ("the overall minimum of his incarceration has been extended"). Accordingly, he asserts that his prior counsel improperly induced his plea, the PCRA court should have granted him relief on his related ineffective assistance claim, and this Court should remedy the ineffectiveness by remanding either for a withdrawal of his plea or a sentencing hearing that would result in a new term with a minimum sentence that would not exceed the minimum sentence that he had already been serving in his prior unrelated matter.[4] *Id.* at 17-21.

In reviewing an order denying a PCRA petition, our standard of review is well settled:

_____

[4] Appellant appears to have abandoned his former request for an amendment of his sentencing order to reflect an earlier commencement date for his sentence in this case. *See* Appellant's Brief, 18 ("Appellant also notes that duplicate credit for time spent in custody is not permitted."). The PCRA court in its opinion maintains that it cannot change the effective date of Appellant's sentence based on the outdated, superseded Pa.R.Crim.P. 1406(c) provision cited in the Commonwealth's response to Appellant's amended PCRA petition. *See* PCRA Court Opinion, 10/8/24, 5.

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and format altered).

To prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011). To establish prejudice, "the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Id.* at 1127-28. "Pennsylvania law presumes counsel has rendered effective assistance." *Commonwealth v. Mullen*, 267 A.3d 507, 512 (Pa. Super. 2021).

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006) (citation omitted). However, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an

involuntary or unknowing plea." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). "Where the defendant enters a plea on counsel's advice, the voluntary and knowing nature of that plea turns on whether counsel's advice fell within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Escobar*, 70 A.3d 838, 841 (Pa. Super. 2013). Further, in determining "a defendant's actual knowledge of the implications and rights associated with a guilty plea, a court is free to consider the totality of the circumstances surrounding the plea." *Commonwealth v. Allen*, 732 A.2d 582, 588-89 (Pa. 1999).

Appellant notes that, while the imprisonment sentence in the instant case does not "extend his maximum" term, it "extended his minimum" term in the former sentence by delaying the earliest date upon which he could become eligible for parole. Appellant's Brief, 17-18; *see* 42 Pa.C.S. § 9761(a) ("If a minimum sentence imposed by the court which is to run concurrently with one which has been previously imposed would expire later than the minimum of such a previously imposed sentence, … the defendant shall be imprisoned at least until the last imposed minimum sentence has been served."). He asserts that the record made it seem that he "did not completely understand that [his] overall minimum would be extended as it was," and that his former counsel "did not make clear to [him] how the plea would affect his minimum." *Id.* at 18. Based on counsel's failure to advise him on the augmented overall minimum time at which he could seek parole, Appellant reasons that "[h]e is certainly not getting what he bargained for and what he

believe[d] was plainly promised on the record," *i.e.*, parole eligibility on May 31, 2023, instead of October 21, 2025. *Id.* at 17-18. The key premise of Appellant's ineffectiveness claim is that the timing of his parole eligibility was a "material aspect" of his negotiated sentence and that plea counsel induced his plea by not making it "clear to [him] that his minimum date would be made longer." *Id.* at 20.

At the outset, we find that there was no enforceable term of the plea agreement of which Appellant was deprived. The only conditions in the agreement bearing on the terms of Appellant's imprisonment were that he would receive three-to-six-year imprisonment terms for each of the charges to which he was pleading guilty, and those terms would be served concurrently with each other and concurrently with any other sentence that he was then serving. *See* N.T. Guilty Plea Hearing, 10/21/22, 5 (Prosecutor: "Agg F1 and conspiracy F1. Three to six on both, concurrent to each other and concurrent to any other sentence."); Guilty Plea Colloquy, 10/21/22, 3 ("Plea Bargain or Agreement"). Appellant did not negotiate any condition in his plea agreement concerning parole eligibility. Appellant's statements in his exchanges with his former counsel and the court during the plea agreement only addressed whether the sentence in the instant case would be designated to be served concurrently with his then-existing sentence in the former matter. *See* N.T. Guilty Plea Hearing, 10/21/22, 3-4 (counsel assuring Appellant that instant sentence was "not going to go longer" than prior imprisonment sentence), 11 (plea court noting, "Everything is running concurrent").

- 13 -

Finding that the record does not support the notion that Appellant was deprived of the benefit of his bargain, we next turn to the question of whether plea counsel's failure to inform him about the timing of his parole eligibility rendered his plea invalid. On this point, we find no error by the PCRA court in the rejection of the ineffective assistance claim.

To be valid, a plea must be voluntary, knowing, and intelligent. *See* ***Commonwealth v. Persinger***, 615 A.2d 1305, 1307 (Pa. 1992). To ensure the entry of a valid plea, Rule 590(B)(2) of the Pennsylvania Rules of Criminal Procedure requires that the plea court "conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea … is based." Pa.R.Crim.P. 590(B). The Comment to Rule 590 provides, at a minimum, the trial court should ask questions to elicit the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to a trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) ***Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?***

(6)  Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590, Comment (emphasis added).[5]

Generally, "a defendant's lack of knowledge of collateral consequences of the entry of a guilty plea does not undermine the validity of the plea, and counsel is therefore not constitutionally ineffective for failure to advise a defendant of the collateral consequences of a guilty plea." **Commonwealth v. Abraham**, 62 A.3d 343, 350 (Pa. 2012).  We have previously regarded parole eligibility as a collateral consequence, which has no bearing on the voluntariness of a guilty plea.  **See Commonwealth v. Stark**, 698 A.2d 1327, 1331-32 (Pa. Super. 1997) (courts need not inform defendants of parole eligibility at guilty plea hearings, and only need inform defendants, *inter alia*, of permissible range of sentences and maximum punishment that might be imposed; treating defendant's eligibility for parole as "collateral consequence" of guilty plea); *id.* at 1332 ("we hold that the court need not advise a pleading defendant of the release rules of the Pennsylvania Board of Probation and Parole or his chances for parole, even assuming the court could predict such an administrative procedure").  Appellant was fully advised of the maximum and minimum ranges for his new sentences as required by Rule 590.  Because Appellant's eligibility for parole is merely a "collateral consequence" of his

---

[5] The Comment also includes a seventh question, which is applicable only when a defendant pleads guilty to murder generally.

plea, Appellant's plea counsel was not ineffective for failing to inform him that the entry of his instant plea would delay his eligibility for parole in his other case. **See** 42 Pa.C.S. § 9542 (PCRA does not provide relief from collateral consequences of criminal conviction); **see also Hill v. Lockhart**, 474 U.S. 52, 57 (1985) (there is no constitutional or statutory requirement that a federal court advise a defendant about parole eligibility in order for the defendant's plea to qualify as voluntary).

As Appellant's ineffective assistance of counsel claim only alleged counsel's failure to offer advice on a collateral consequence of his guilty plea, we find that the claim had no arguable basis for merit.[6] While Appellant appears to have abandoned any claim concerning the commencement date for his imprisonment sentence in this matter, we note that our affirmance of the PCRA court's decision is without prejudice to his right to pursue a challenge

_____

[6] Appellant's claim only suggested an omission of advice concerning parole eligibility rather than the communication of erroneous advice on that issue. **See** Appellant's Brief, 20 ("Here, plea-counsel induced the guilty plea because he failed to make clear to appellant that his minimum date would be made longer."). A claim alleging that counsel had erroneously advised Appellant as to his parole eligibility would require a different analysis altogether. **See Commonwealth v. Hickman**, 799 A.2d 136, 142 (Pa. Super. 2002) ("though the validity of a guilty plea clearly does not depend on a judicial explanation of parole eligibility, we conclude a plea's validity may be compromised when counsel issues erroneous advice on how the law will affect the duration of a client's sentence"); **see also Commonwealth v. Barndt**, 74 A.3d 185, 196, 200-01 (Pa. Super. 2013) (concerning collateral consequences of guilty plea, counsel's "sins of omission" must be treated differently than "sins of commission").

to the Department of Corrections' computation of his awarded time-credit in an original action in the Commonwealth Court.[7]

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2025

_____

[7] We decline to transfer this appeal to the Commonwealth Court to address the time credit computation issue seemingly rejected by the PCRA court based on the Commonwealth's assertion below of the outdated and superseded rule at Pa.R.Crim.P. 1406(c). **See supra** note 3. Nevertheless, as this issue was first presented in Appellant's PCRA petition, the Commonwealth Court caselaw precludes that Court from employing original jurisdiction to engage in appellate review. **See Commonwealth v. Schill**, 647 A.2d 695, 696 (Pa. Cmwlth. 1994) (dismissing case and stating that "although this [C]ourt has jurisdiction to adjudicate a time credit issue concerning the [Department of Corrections], this type of case must be addressed to our original jurisdiction … and cannot be brought in a post-conviction relief challenge initiated in a court of common pleas.") (citation omitted). Moreover, Appellant abandoned the claim raised in his PCRA petition in this appeal.